BUSCH & SONS, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. RETAIL UNION OF NEW JERSEY, LOCAL 108—AFFILIATED WITH R.W.D.S.U.— C. I. O., MAX GREENBERG, IRVING ROSENBERG, LOUIS JACOBS, BERNARD G. HUGHES, PAUL HORN, WESLEY B. DAVIS (ALSO KNOWN AS WESLEY BRYANT), NICHOLAS PELURO AND LOUIS S. MOORE, DEFENDANTS-APPELLANTS.

Argued March 8, 1954—Decided April 5, 1954.

*Mr. Samuel L. Rothbard* argued the cause for appellants (*Messrs. Rothbard, Harris & Oxfeld,* attorneys; *Mr. Abraham L. Friedman,* of counsel).

*Mr. Samuel Kaufman* argued the cause for respondent (*Messrs. Bilder, Bilder & Kaufman,* attorneys; *Mr. John M. Kaufman* on the brief).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. The original restraint of October 9, 1951 allows orderly picketing and will stand, but the restraint of April 22, 1953 enjoining all picketing is set aside. This result is required by the decision of the United States Supreme Court in *Garner v. Teamsters, C. & H. Union,* 346 *U. S.* 485, 74 *S. Ct.* 161, 98 *L. Ed.* ——, which came down December 14, 1953, after the Appellate Division, on October 1, 1953, 27 *N. J. Super.* 432, sustained the Chancery Division judgment embodying the April 22 restraint. We allowed certification upon defendants' petition, 14 *N. J.* 111 (1953).

Plaintiff is a retail jewelry concern with three stores in New Jersey and stores in other states, and that it is engaged in interstate commerce is conceded. The controversy between it and the defendants started in April 1951 when eight of the 37 employees of the New Jersey stores went on strike in support of the defendant union's demand for recognition as exclusive bargaining agent. Shortly before the strike two other employees were discharged, it appears for reasons of economy. Picketing was begun before the main

store at 875 Broad Street, Newark. There were instances of mass picketing and other disorders which prompted plaintiff to file a complaint for injunctive relief which resulted in the restraint of October 9, 1951 already mentioned.

■■ Meanwhile the employer initiated a representation proceeding before the National Labor Relations Board seeking an election to determine whether the employees desired the union to represent them. The representation proceeding resulted in an order directing an election, but the Board's determination declared that the strikers were ineligible to vote, having been replaced by new employees before December 1951. The Board stated, "Under these circumstances, we find that the replacements were hired as permanent employees, that they are eligible to vote, and that the strikers whom they replaced are not eligible to vote." See 29 *U. S. C. A.*, § 159(c)(3). Judicial review of the determination was not available, as neither party to the controversy has made any charge against the other of unfair labor practice, and unless some not plainly untenable constitutional question is raised, judicial review of a representation proceeding can be had only as an incident to review of a Board order under section 160(c) which adjudicates a Board complaint of unfair labor practice and is based in whole or in part upon facts certified in the representation proceeding. *Section* 159(d); *Ideal Roller & Mfg. Co. v. Douds*, 111 *F. Supp.* 156 (*D. C. N. Y.* 1953). The union's dissatisfaction with the determination therefore took the form of a petition to the Board to strike its name from the ballot, stating that it did "not claim to represent the employees of the employer in the unit found to be appropriate by the National Labor Relations Board." The petition was granted "on the basis of the aforesaid disclaimer of interest" and the representation proceeding was dismissed.

Orderly picketing, however, was continued by the defendants. On September 12, 1952 the union's attorney wrote plaintiff that "these employees desire to return to work for you and herewith offer to return to work for you at their former positions. * * * I am authorized by the Union

to herewith inform you that upon the reinstatement by you of these employees at their former positions with you, all picketing and other strike activities will immediately cease."

The employer's response was the filing late in September of a supplemental complaint seeking a restraint against all picketing, which restraint was granted and is embodied in the order entered April 22, 1953.

In the *Garner* case the labor union peacefully picketed the loading platform of an interstate trucking company with the purpose, as found by the Pennsylvania courts, "to coerce petitioners [the employer] into compelling or influencing their employees to join the union." The Pennsylvania trial court held that the picketing violated the Pennsylvania Labor Relations Act, *Pa. Laws* 1937, *p.* 1172, *Purdon's Pa. Stat. Anno.* 1952, *Title* 43, *sec.* 211.6, and restrained it. The Supreme Court of Pennsylvania reversed, 373 *Pa.* 19, 94 *A. 2d* 893, holding that the employer's grievance fell within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices proscribed by the Taft-Hartley Act, 61 *Stat.* 136 *et seq.*, 29 *U. S. C. A.* § 141 *et seq.*, and that state remedies were therefore precluded. The United States Supreme Court affirmed.

The rationale of the *Garner* decision is that "federal occupancy" of the field debarred Pennsylvania from "continuing to exercise its conventional equity powers." Mr. Justice Jackson wrote the opinion for a unanimous court and said (346 *U. S.* 488–490, 74 *S. Ct.* 165, 98 *L. Ed.* ——):

"Congress has taken in hand this particular type of controversy where it affects interstate commerce. In language almost identical to parts of the Pennsylvania statute, it has forbidden labor unions to exert certain types of coercion on employees through the medium of the employer. It is not necessary or appropriate for us to surmise how the National Labor Relations Board might have decided this controversy had petitioners presented it to that body. The power and duty of primary decision lies with the Board, not with us. But it is clear that the Board was vested with power to entertain petitioners' grievance, to issue its own complaint against respondents and, pending final hearing, to seek from the United States District Court an injunction to prevent irreparable injury to petitioners while their case was being considered. The question then is whether the State,

through its courts, may adjudge the same controversy and extend its own form of relief.

Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order."

 New Jersey, unlike Pennsylvania, does not have a state labor relations law. The plaintiff-employer urges that the reach of the *Garner* decision is limited to cases of conflict between the Taft-Hartley Act and a state law in the same field. It is true that Mr. Justice Jackson noted that the Pennsylvania trial court's restraint "appears to have been granted because the picketing violated the state statute." But with his characteristic care and clarity of expression he leaves no doubt that the controlling force of the *Garner* decision is not the less when, as here, the restraint against all picketing invokes the exercise by a state court of general equity powers to protect the employer against damage to its business. He states, (346 *U. S.* 499–501, 74 *S. Ct.* 170, 98 *L. Ed.*, at *pages* ——, ——) :

"The detailed prescription [in the Taft-Hartley Act] of a procedure for restraint of specified types of picketing would seem to imply that other picketing is to be free of other methods and sources of restraint. For the policy of the national Labor Management Relations Act is not to condemn all picketing but only that ascertained by its prescribed processes to fall within its prohibition. Otherwise, it is implicit in the Act that the public interest is served by freedom of labor to use the weapon of picketing. For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

We conclude that when federal power constitutionally is exerted for the protection of public or private interests, or both, it becomes the supreme law of the land and cannot be curtailed, circumvented or extended by a state procedure merely because it will apply some doctrine of private right. To the extent that the private right may conflict with the public one, the former is superseded. To the extent that public interest is found to require official enforcement instead of private initiative, the latter will ordinarily be excluded. Of

course, Congress, in enacting such legislation as we have here, can save alternative or supplemental state remedies by express terms, or by some clear implication, if it sees fit.

On the basis of the allegations, the petitioners could have presented this grievance to the National Labor Relations Board. The respondents were subject to being summoned before that body to justify their conduct. We think the grievance was not subject to litigation in the tribunals of the State."

State power is not wholly precluded, however. Mr. Justice Jackson's opinion reaffirms that a state's "historic powers over such traditionally local matters as public safety and order and the use of streets and highways" may be invoked to relieve against "mass picketing, threatening of employees, obstructing streets and highways, or picketing homes." *Allen-Bradley Local No. 1111, United Electrical, Radio and Machine Workers of America, U. E. R. M. W. v. Wisconsin Employment Relations Board,* 315 *U. S.* 740, 62 *S. Ct.* 820, 86 *L. Ed.* 1154 (1942). It was conduct of this nature which resulted in the restraint allowed October 9, 1951 in the instant case imposing terms as to the manner of picketing and the number of pickets. That order was not appealed and counsel for defendants on the oral argument conceded its propriety and efficacy.

Nor, as the *Garner* opinion notes, is state power precluded to deal with "an instance of injurious conduct which the National Labor Relations Board is without express power to prevent and which therefore either is 'governable by the state or it is entirely ungoverned.'" Such was the situation in *International Union, U. A. W., A. F. of L., Local 232 v. Wisconsin Employment Relations Board,* 336 *U. S.* 245, 69 *S. Ct.* 516, 93 *L. Ed.* 651 (1949), rehearing denied 336 *U. S.* 970, 69 *S. Ct.* 935, 93 *L. Ed.* 1121 (1949), which upheld remedies granted by state tribunals against a labor union which instigated intermittent and unannounced work stoppages in violation of a state law making it an unfair labor practice for employees to interfere with production except by leaving the premises in an orderly manner for the purpose of going on strike; it was held that neither the National Labor Relations Act nor the Taft-Hartley Act

sanctions or provides remedies against such conduct and that therefore the state was not prevented from policing such activities.

█ The preemption problem arises from the introduction by the Taft-Hartley Act of a category of union and employee activities which are denounced as unfair labor practices by that law. The United States Supreme Court had the benefit in the *Garner* case of findings of fact by the Pennsylvania courts that the peaceful picketing there involved was purposed to coerce the employer into compelling or influencing his unorganized employees to join the union. The high court held that this constituted coercion upon employees through the medium of the employer in violation of section 8(b) of the Taft-Hartley Act and was conduct primarily cognizable by the National Labor Relations Board, precluding state power in the premises, there being no showing that the federal Board would decline to exercise its powers if its jurisdiction was invoked by the employer. It is not mandatory upon the Board to issue an unfair labor practice complaint upon every charge of unfair labor practice filed with it. The statute, 29 *U. S. C. A.* § 160(*b*), provides:

"Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board * * * *shall have power* to issue * * * a complaint stating the charges * * *." (Emphasis supplied)

The *Garner* opinion recognizes, therefore, that in particular cases, whether the picketing is purposed to be an activity proscribed by the Taft-Hartley Act, or if so improperly purposed, whether the Board would decline to exercise its power, may be controverted questions, and also that there might be involved an issue whether the union's plea of federal jurisdiction was frivolous and dilatory. The opinion strongly implies that state remedies need not be denied if it appears that the National Labor Relations Board would decline to exercise its powers to deal with the employer's grievance or the defendant union fails seasonably to make at least a *prima facie* showing that a charge by the aggrieved employer might be made the subject of a complaint of unfair labor

practice by the National Labor Relations Board. This, we think, is the clear import of the sentence in the opinion, "Nor is there any suggestion that respondents' [the Union's] plea of federal jurisdiction and pre-emption was frivolous and dilatory, or that the federal board would decline to exercise its powers once its jurisdiction was invoked." It may be a matter of some difficulty in these cases to say whether the Board would decline to exercise its power when, as here, it does not affirmatively appear that the employer unsuccessfully sought to have the Board do so.

But in the instant case state power is unquestionably precluded if the decision is made to rest simply upon consideration of the allegations of the supplemental complaint. The allegations are that defendants' peaceful picketing constitutes an attempt to force the employer to "bring pressure upon its employees to join the defendant union" "solely to disrupt and disorganize plaintiff's business for unlawful purposes including forcing the plaintiff, in violation of the Taft-Hartley law, to coerce its employees to join the Union," —which puts the case on all fours with the facts in the *Garner* case. And plaintiff insisted at the trial that it was entitled to relief from the state court upon this theory, its counsel interposing an objection, which was sustained by the trial judge, when counsel for the union sought to develop from plaintiff's president "why also if the Company thinks that the picketing was illegal in any way, didn't the Company file a charge of unfair labor practice as against the Union with respect to the illegal picketing?" Defendants' counsel argued that he should be permitted to pursue that inquiry upon the ground that "if this Company is engaged in interstate commerce, as Mr. Sargent [plaintiff's president] contends, then the Court has no jurisdiction, because Congress has preempted the jurisdiction and given it to the National Labor Relations Board with regard to unfair labor practice in companies engaged in interstate commerce."

However, the trial judge made no fact finding one way or the other whether the picketing was purposed as alleged, but turned his decision on a statement of the union's coun-

sel during the trial that "since September 12, 1952 the pickets were picketing for only one purpose, that is to obtain reinstatement of the nine employees," the judge reasoning that, accepting this to be the single purpose of the picketing, the "right of these employees to have their jobs back has been disposed of by the decision of the N. L. R. B. and since that is the only reason for the picketing, * * * there is no labor dispute * * * and in the absence of a labor dispute the picketing is unlawful. *Outdoor Sports Corp. v. A. F. of L. Local* 23132, 6 *N. J.* 217 (1951)." But, even if such was the purpose of the picketing, the principles laid down in *Garner* are applicable here.

It is immaterial whether a "labor dispute" within *N. J. S. A.* 2A :15–58(c) still existed, bringing the picketing within the protection of the New Jersey Act, *N. J. S. A.* 2A :15–51 *et seq.* The picketing may nevertheless be conduct of which the National Labor Relations Board would take cognizance and make the subject of a complaint of unfair labor practice under the Taft-Hartley Act. Unless we are able to say that the picketing to secure reinstatement is under all the circumstances conduct without the Board's power to prevent, our courts must acknowledge the Board's primacy to deal with it, it not appearing that the Board would refuse to do so and defendants having interposed a timely demand that the trial court recognize that the case was one primarily for the Board's consideration. The court's duty is not the less compelling because a Board proceeding might result in a determination that the picketing is not an unfair labor practice. As said in *Garner*, if the picketing does not "fall within its prohibition * * * it is implicit in the Act that the public interest is served by freedom of labor to use the weapon of picketing," and "For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits."

Until the argument in this court, plaintiff has contended on appeal that, viewed as purposed only to secure reinstate-

ment, the picketing is a violation of the Taft-Hartley Act, this because reinstatement of the strikers allegedly would require dismissal of those who replaced them. Plaintiff's brief in the Appellate Division argued:

"The demand of the defendant union in this case for the plaintiff to discharge a faithful employee without cause and to give his job to a union member thus constitutes an illegal demand.

\* \* \* \* \* \* \* \*

If the plaintiff-employer had succumbed to the demands of the union, the plaintiff would itself have been guilty of an unfair labor practice under the Labor-Management Relations (Taft-Hartley) Act of 1947 \* \* \*.

The defendant union continued to picket after the decision of the N. L. R. B. to compel the plaintiff to do unlawful acts—to discharge its nine employees and replace them with nine union members whom the N. L. R. B. had decided were not entitled to reinstatement."

And plaintiff's contention in this regard prevailed in the Appellate Division which held, 27 *N. J. Super.* 432, at *pages* 441–442:

"In the present situation, at the time of injunction the picketing was in furtherance of a non-existent right, and there being no vacancies in the employer's service, necessarily it sought to compel the discharge of permanent employees whose rights were protected by the Labor-Management Act. The discharge of these permanent employees would constitute an act of discrimination in favor of the union members who had abandoned the claim for union recognition, and against employees who had indicated by affidavit that they did not wish to join the union. In doing so the employer would be guilty of an unfair labor practice in violation of the Labor-Management Relations Act, 29 *U. S. C.* §§ 157 and 158 (a) (1) and (3). Likewise, the act of the union in procuring the discharge would be an unfair labor practice contrary to the same act, §§ 157 and 158 (b) (1) and (4)."

In this court the plaintiff's brief opposing the defendants' petition for certification again emphasized this argument. The last two paragraphs from its brief in the Appellate Division were repeated and there was added, "They were picketing to compel the discharge of plaintiff's permanent employees—both an unfair labor practice under Federal law and a violation of New Jersey law."

But our conclusion that the order of April 22 must be set aside is not grounded upon any estoppel of the plaintiff

to be heard to contend here the contrary of the proposition steadfastly urged by it in the Appellate Division and in opposition to defendants' petition for certification. Nor does it rest upon the Appellate Division's declaration that the peaceful picketing to secure reinstatement is an unfair labor practice in violation of the Taft-Hartley Act. It is not the province of the state courts, directly or by indirection through invoking an estoppel against the employer, to say whether or not the picketing in the circumstances shown constitutes an unfair labor practice. That determination is primarily for the National Labor Relations Board; as said in *Garner*, "The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal Board, precludes the state courts from doing so." We reach our result because from our examination of the record in light of the Taft-Hartley Act, we are not persuaded that the picketing, even if purposed only to secure the reinstatement of the strikers, is "an instance of injurious conduct which the National Labor Relations Board is without express power to prevent," *International Union, etc. v. Wisconsin Employment Relations Board, supra*; and from what appears, plainly it cannot be said that the defendants' "plea of federal jurisdiction * * * was frivolous and dilatory," "or that the federal Board would decline to exercise its powers once its jurisdiction was invoked," *Garner v. Teamsters, C. & H. Union, supra*. In the circumstances our courts are required under the *Garner* decision to recognize that they are without power to adjudicate the plaintiff's grievance.

Reversed, with direction to set aside the judgment of the Chancery Division entered April 22, 1953.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.