# Dallas General Drivers, Warehousemen and Helpers Et Al v. Wamix, Incorporated of Dallas

No. A-5503. Decided October 10, 1956.
Rehearing overruled December 19, 1956.
(295 S.W. 2d Series 873)

*Mullinax & Wells, Houston Clinton, Jr.* and *L. N. D. Wells, Jr.,* all of Dallas, for petitioners.

The Court of Civil Appeals erred in sustaining state jurisdiction to enjoin in a field pre-empted by the Federal law. Garner v. Teamsters Union, 346 U.S. 486, 74 Sup. Ct., 161; Amalgamated Ass'n v. McDowell, 150 S.W. 2d 866, no writ history; Weber v. Anheuser-Busch, 348 U.S 593, 75 Sup. Ct., 480.

*Sam R. Sayers, Joseph A. Jenkins, Rawlings, Sayers, Scurlock & Edison,* all of Fort Worth, for respondents.

On the question of the right of the state courts to retain jurisdiction cited; Best Motor Lines v. Teamsters Union, 150 Texas 95, 237 S.W. 2d 589; North East Texas Motor Lines v. Dickson, 148 Texas 35, 219 S.W. 2d 795.

MR. JUSTICE CALVERT delivered the opinion of the Court.

A brief history of the relationship between the parties is necessary to an understanding of our discussion of the questions involved in this case. That history may be found, in large part, in the opinion of the United States Court of Appeals, Fifth Circuit, in National Labor Relations Board v. Concrete Haulers, Inc., et al., 212 Fed. 2d 477. The parties will be referred to in this opinion as Union and Wamix, respectively.

In May, 1951, Union, having obtained signatures of eight of Wamix's fourteen truck drivers, requested Wamix to enter into

negotiations for a contract. Wamix refused, and on June 7, 1951, the eight drivers holding union cards left the plant and established a picket line. Thereupon Wamix notified the striking drivers that they would be replaced if they did not return to work.

The National Labor Relations Board took jurisdiction of the controversy under its finding, contrary to Wamix's contention, that Wamix was "engaged in commerce within the meaning of the Act" and that it "furnished material valued in excess of $50,000 annually to enterprises engaged in performing services outside the State of Texas in the value of $25,000 annually."

The N.L.R.B. found, after hearing, that in refusing to bargain with Union Wamix had violated Section 8(a)(5) of the Labor-Management Relations Act, 29 U.S.C.A., Sec. 151, et seq., popularly known as the Taft-Hartley Act, and that the strike of the drivers was "an unfair-labor-practice strike." The N.L.R.B. found further that Wamix, by threatening the strikers with loss of their jobs, had violated Section 8(a)(1) of the Act and had also violated Section 8(a)(1) by interrogating two employees concerning their membership in the union. On August 12, 1953, the Board ordered Wamix to reinstate, upon application, those strikers not already reinstated, and to make them whole for any loss of pay. It also ordered Wamix to bargain with Union with respect to a contract covering wages, hours and working conditions. This order was enforced by the United States Court of Appeals, Fifth Circuit. 212 Fed. 2d 477. The judgment of the court was rendered on May 6, 1954.

On July 15, 1954, the N.L.R.B. adopted new and more restrictive standards for determining whether the impact of a particular business on interstate commerce was such as to justify the Board in taking jursidiction of a labor dispute to which such business was a party.

On July 23, 1954, Wamix and Union began negotiations looking to the execution of a contract and the negotiations continued to September 23. During the negotiations Wamix submitted five different contracts for Union's consideration and Union submitted three contracts for Wamix's consideration, but no agreement was reached. On September 23rd Union's representatives broke off negotiations and on September 30th ten Wamix employees established a picket line. Wamix replaced the striking employees on a permanent basis with new employees.

In the meantime, on September 18th, Wamix filed in the

United States Court of Appeals, Fifth Circuit, a motion to modify the enforcement order theretofore rendered so as to relieve it of the obligation to continue to bargain with Union. The basis of its motion was that the nature of its business was such that it did not meet the new standards set by the N.L.R.B. as prerequisite to the taking of jurisdiction. The motion was opposed by the N.L.R.B. On October 16th the court entered its order denying the motion to modify. 215 Fed. 2d 959.

It was in the light of the foregoing historical background that Wamix, on October 18th, filed this suit against Union and certain individual defendants seeking damages, a restraining order, and a temporary and permanent injunction. The purpose of the injunctive relief sought was to prohibit the picketing activities of Union and the other defendants.

The trial court granted a restraining order without a hearing, and, upon a hearing, granted a temporary injunction enjoining and restraining the defendants as follows: (1). From picketing plaintiff's concrete hauler and mixer trucks at or near the premises where five named construction companies were engaged in construction projects, and on or near premises "where any other persons, firms or corporations are engaged in constructing buildings or other work and are purchasing or desirous of purchasing plaintiff's concrete, and from establishing and maintaining ambulatory and roving pickets to follow or accompany any of plaintiff's hauler-mixer trucks while operating in the usual course of business in the delivery of Red-D-Mix concrete to any job site." (2) From publishing orally or in writing any statement to the effect or implying that Wamix trucks were being driven by strike breakers or that all regular Wamix drivers were on strike. (3) From using insulting, threatening and indecent language toward any Wamix employees, who desire to work, for the purpose of interfering with, hindering and intimidating such employees. The judgment was affirmed by the Court of Civil Appeals. 281 S.W. 2d 738.

The trial judge filed extensive findings of fact and conclusions of law in support of his judgment. They are set out in full in the opinion of the Court of Civil Appeals, 281 S.W. 2d 738-744, and need not be repeated in full in this opinion. The pertinent findings of fact will be summarized later.

The first point of error presented by Union in the Court of Civil Appeals and in this Court attacks the jurisdiction of the district court to grant injunctive relief. Union asserts that ex-

clusive jurisdiction of this phase of the case was in the N.L.R.B. Wamix answers that the principal relief sought by it was damages, relief within the jurisdiction of the state court to grant, and that having jurisdiction over its suit for damages the state court had incidental jurisdiction to grant ancillary injunctive relief to preserve the status quo and to prevent irreparable injury pending a trial of the damage suit on its merits. The Court of Civil Appeals agreed with Wamix on the question thus posed and its judgment of affirmance rested primarily on that basis. 281 S.W. 2d 745. In that conclusion we think the Court of Civil Appeals erred.

■ If exclusive jurisdiction of the labor practices sought to be enjoined was in the N.L.R.B. under the Labor-Management Relations Act that exclusive jurisdiction could not be defeated or ousted and jurisdiction thereof conferred on a state court by the simple expedient of joining a count for damages with a count for injunctive relief. Neither U. S. Construction Workers v. Laburnum Construction Corp., 347 U.S. 656, 74 Sup. Ct. 833, 98 L. Ed. 1025, nor Benjamin v. Foidl, 379 Pac. 540, 109 A. 2d 300, 301, cited by the Court of Civil Appeals and by Wamix, support the holding that it could. No relief other than damages was sought by the employer in Laburnum. The holding of the Supreme Court of the United States in that case is therefore limited to the proposition that inasmuch as Congress had not made provision through federal legislation for compensatory relief for injuries incurred from unlawful labor activities, the traditional jurisdiction of state courts to grant such relief continued in existence. In Benjamin v. Foidl, supra, suit was in a state court and was for damages and injunctive relief. The trial court dismissed the suit on the theory that exclusive jurisdiction lay with the N.L.R.B. Wamix emphasizes the fact that the Supreme Court of Pennsylvania reversed and in the course of its opinion said: "It is obvious that the tortious conspiracy may be enjoined where it affects property rights." The quoted sentence must be read, however, in the light of the facts in the case, among which was that *"it was not shown* at the hearing on continuance of the injunction *that the plaintiffs were engaged in interstate commerce."* It is elementary that even if a labor activity comes within the Federal Act's definition of an unfair labor practice, the N.L.R.B. has no jurisdiction unless the same is in or affects interstate commerce.

■ If the labor practice involved is within the protection of, or is prohibited by, the Taft-Hartley Act and the business involved is in or affects interstate commerce, the N.L.R.B. has

exclusive jurisdiction to adjudicate the need for injunctive relief and a state court has no jurisdiction to grant such relief, except to preserve the public peace against violence, mass picketing, etc., unless it is made to appear that the N.L.R.B. either has refused or would refuse to take jurisdiction of the matter. Garner v. Teamsters Union, 346 U.S. 485, 74 Sup. Ct. 161, 98 L. Ed. 228; Building Trades Council v. Kinard Const. Co., 346 U.S. 933, 74 Sup. Ct. 373, 98 L. Ed. 423; Capital Service, Inc. v. National Labor Relations Board, 347 U.S. 501, 74 Sup. Ct. 699, 98 L. Ed. 887; Weber v. Anheuser-Busch, 348 U.S. 468, 75 Sup. Ct. 480, 99 L. Ed. 546. This rule, often repeated and enforced by the Supreme Court of the United States, would be nothing but empty and meaningless words if the jurisdiction of the N.L.R.B. could be ousted by the simple expedient of coupling a prayer for compensatory relief with a prayer for injunctive relief in a petition filed in a state court. The fact that Section 8 of Article V of the Texas Constitution and Article 4642, Revised Civil Statutes, 1925, authorize state courts to grant ancillary injunctive relief to enforce thir jurisdiction or to preserve the status quo of a suit does not alter the situation. Moreover, jurisdiction of the N.L.R.B., conferred by Congress, cannot be made to turn on whether a judge of a state court believes, in a particular case, that the injunctive relief sought is incidental to the prayer for damages, or, on the other hand, that the compensatory relief sought is only incidental to the prayer for injunctive relief. If the record discloses that the N.L.R.B. has jurisdiction over the labor practice involved, a state court does not have and cannot exercise jurisdiction to grant injunctive relief, except to preserve the public peace against violence, mass picketing, etc., even though the suit also involves a claim for damages, unless it is shown that the N.L.R.B. either has refused or would refuse to take jurisdiction.

Our holding on the question discussed does not mean, however, that the trial court erred in refusing to dismiss the suit. Other reasons are asserted for sustaining that action of the trial court. We have concluded that it must be sustained because of the failure of Union to tender the minimum degree of proof necessary to show jurisdiction in the N.L.R.B.

■ When a suit seeking injunctive relief against labor practices is filed in a state court that court will be held to have jurisdiction unless the evidence shows that: (1) the activity is one coming within the area covered by the Labor-Management Relations Act, and (2) the business is one affecting interstate commerce. The evidence in this case shows that the ac-

tivity sought to be enjoined is one covered by the Act but there is in the record no evidence that the business of Wamix is in or affects interstate commerce. If Union wished to challenge the court's jurisdiction the burden was on it to adduce evidence that Wamix's business affected interstate commerce, at least to some degree. This Union did not do, being content, apparently, to rest its motion to dismiss strictly on the proposition that N.L.R.B. and the federal judiciary had theretofore taken and exercised jurisdiction to require Wamix to carry on negotiations for a contract with Union. What Union fails to come to grips with is that the trial court found that Wamix had negotiated in good faith with Union and continued willing to do so when Union broke off negotiations. The picketing activity of Union was therefore an entirely new activity over and concerning which jurisdiction of the N.L.R.B. had not even been invoked, much less assumed.

■ We cannot hold that a finding by N.L.R.B. that a business once affected interstate commerce can be taken as foreclosing that issue, or even of establishing it prima facie, at a subsequent time, in a subsequent suit or proceeding. It is not unreasonable to impose on one challenging the jurisdiction of a state court in a proceeding of this character the burden to make a prima facie case by proof that the business to some degree affects interstate commerce.

In connection with the foregoing discussion and in order that what we have held may be entirely clear, it perhaps will be well to state what we have *not* held. We have *not* held that to defeat the jurisdiction of a state court a defendant must establish that the impact of the business on interstate commerce measures up to the standards set by the N.L.R.B. Neither have we held that a state court has jurisdiction to determine, in the first instance, whether the business of an employer measures up to the standards set by N.L.R.B. as a prerequisite to taking jurisdiction. It is not necessary to decide those questions in this case and we do not decide them.

Having held that the district court did not err in taking jurisdiction of this suit we come now to consider whether the temporary injunction issued by that court should be sustained or whether it should be dissolved.

■ We are aware, of course, that the issuance of a temporary injunction to preserve the status quo pending a final trial of a suit on its merits is largely discretionary with a trial judge and that his judgment will be reversed only where the issuance of

the writ was a clear abuse of discretion. Texas Foundries, Inc. v. International M. & F. W. Union, 151 Texas 239, 248 S.W. 2d 460; Transport Co. of Texas v. Robertson Transports, Inc., 152 Texas 551, 261 S.W. 2d 549. On the other hand, it is equally well settled that a temporary injunction will be dissolved if it is based upon an erroneous application of the law to the facts. Southland Life Ins. Co. v. Egan, 126 Texas 160, 86 S.W. 2d 722.

We consider, then, whether a correct application of law to the pertinent facts in evidence will support the injunction. We will consider separately, in inverse order, the three prongs of the temporary injunction heretofore noted, which for better understanding we repeat.

(3) From using insulting, threatening and indecent language toward any Wamix employees, who desire to work, for the purpose of interfering with, hindering and intimidating such employees.

The only evidence of the use by the defendants of what might be deemed by some to be insulting or indecent language is that on one occasion the foreman of one of the construction projects refused to permit a Wamix driver to deliver his concrete while pickets were passing in front of the entrance to the project, whereupon one of the defendant strikers said to the driver: "We got her tied up, haven't we, you damned scab."

It will be noted that the trial court did not use this isolated statement as a basis for enjoining all picketing. The injunction ran only against the use of condemned language for the purpose of interfering with, hindering and intimidating Wamix employees.

■ The law does not sanction the issuance of a temporary injunction except to prevent a threatened injury. Spears v. City of South Houston, 136 Texas 218, 150 S.W. 2d 74, 78. Furthermore, "an injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural." Haden Employees' Ass'n. v. Lovett, Texas Civ. App., 122 S.W. 2d 230, 232, writ refused. In other words, before an injunction issues there must be evidence that injury is threatened.

■ In Ex Parte Tucker, 110 Texas 335, 220 S.W. 75, this Court committed itself emphatically to the proposition that the right of one to speak ill of another is protected by the Bill of Rights

(Sec. 8 of Article I of the State Constitution) and that a court has no power to control by injunction what one person says of another, even in a labor dispute, unless there be evidence that language will be used which is intimidating and coercive in character. The real question here, then, is this: does the one isolated reference to a Wamix employee as "a damned scab," the reference being made twelve days before the filing of suit and being the only untoward statement made by a picket during the entire period of eighteen days between the stationing of pickets and the filing of suit justify the conclusion that unless restrained and enjoined therefrom defendants would, in reasonable probability, use such insulting, threatening and indecent language toward Wamix employees as was calculated to intimidate and coerce them not to perform their duties to their employer? We think not. This part of the injunction will be dissolved without prejudice to the right of the trial court to reinstate it if future conduct of the defendants should authorize it.

(2) From publishing orally or in writing any statement to the effect or implying that Wamix trucks were being driven by strike breakers or that all regular Wamix drivers were on strike.

The only evidence and finding of fact supporting this phase of the injunction was that the pickets carried banners reading: "These Wamix trucks are being driven by strike breakers. Regular drivers are on strike. We are not picketing any other company. Local 745." The court concluded that the banners were false and untrue because Wamix trucks were not being driven by strike breakers and none of the 29 or 30 drivers *then* employed by plaintiff was on strike. As heretofore noted, other findings of fact show that ten regular Wamix employees were on strike and assisting in the picketing and that Wamix had replaced these ten striking employees with others.

■ The legend on the banner was not false. At most it carried one slightly false implication. The statement that the trucks were "being driven by strike breakers" was true. One court (a city magistrates court in New York) has accepted the dictionary definition of "strike breaker" as " 'one who takes the place of a workman on strike' ". People v. Kaye, 165 Misc. 663, 1 N.Y.S. 2d 354, 355. But it seems to us the dictionary definition as related to a labor dispute is entirely too restrictive. The one certain hope for Wamix to break the strike was to keep all of its trucks in full operation. To this extent all those driving the

trucks were strike breakers. The statement "Regular drivers are on strike" was literally true also. The ten regular drivers who went on strike did not by virtue of being replaced by Wamix lose the right to refer to themselves as "regular drivers." International Union of Operating Engineers v. Cox, 148 Texas 42, 219 S.W. 2d 787. The mere fact that the banner might give rise to an inference in the minds of some readers that *all* regular Wamix drivers were on strike did not authorize injunctive interference with defendants' right to display the banner as an incident to their right of free speech. Senn v. Tile Layers Protective Union, 301 U.S. 468, 57 Sup. Ct. 857, 81 L. Ed. 1229. The wording of the banner, at its worst, comes within that area which the Supreme Court of the United States has characterized as "loose language or undefined slogans which are a part of the conventional give-and-take in our economic and political controversies * * * ." Cafeteria Employees Union v. Angelos, 320 U.S. 293, 295, 64 Sup. Ct. 126, 127, 88 L. Ed. 58. This part of the injunction will be dissolved.

(1)   From picketing plaintiff's concrete hauler and mixer trucks at or near premises where five named construction companies were engaged in construction projects, and on or near premises "where any other persons, firms or corporations are engaged in constructing buildings or other work and are purchasing or desirous of purchasing plaintiff's concrete, and from establishing and maintaining ambulatory and roving pickets to follow or accompany any of plaintiff's hauler-mixer trucks while operating in the usual course of business in the delivery of Red-D-Mix concrete to any job site."

It is disclosed by the evidence and the findings of fact that Wamix owns four manufacturing plants and is in the business of selling ready-mixed concrete, some of which is mixed at their plants and hauled in leased trucks to the job site of the purchaser and some of which is mixed in a mix-mobile located at the job site. Concrete must be used within an hour after it reaches the job site or it will become valueless.

Union and the other defendants not only put pickets at Wamix's manufacturing plants but also had roving or ambulatory pickets follow Wamix trucks to job sites of construction projects and there establish a picket line, exhibiting the banners heretofore described, with the result that some of those employed on the construction projects would refuse to work and pour concrete as long as the picket line was at the job site. There is no claim or evidence that the pickets went upon pri-

vate property, and the record reflects that the pickets left the job sites when the Wamix trucks left.

It was the type of picketing thus described that was enjoined. The trial court concluded that the picketing was a part of a conspiracy in restraint of trade in violation of state anti-trust laws, Arts. 7426 and 7428, R.C.S. 1925, and Arts. 1632, 1634 and 1635, Penal Code, 1925, and was secondary picketing in violation of Article 5154f, Vernon's Annotated Texas Statutes. As we view the facts, it was neither.

■ It is not a conspiracy in restraint of trade or a violation of the anti-trust laws of this state for workmen to agree to strike and peacefully picket their employer, with whom they have a dispute over wages, in an endeavor to enlist the sympathy of others and to induce them not to do business with their employer, or to induce their fellow employees to cease work. Neither is it a conspiracy in restraint of trade nor a violation of state anti-trust laws for other workmen to honor a picket line. Ex Parte Henry, 147 Texas 315, 215 S.W. 2d 588, 594.

Section 2d of Article 5154f, V.A.T.S., defines "secondary picketing" as "the act of establishing a picket or pickets at or near the premises of any employer where no labor dispute, as that term is defined in this Act, exists between such employer and his employees." Section 2h then defines the term "labor dispute" as limited to and meaning "any controversy between an employer and the majority of his employees concerning wages, hours or working conditions of employment * * *."

■ Picketing of Wamix was not in violation of Article 5154f, V.A.T.S. Wamix states in its brief that it is undisputed that the strike was called "for the purpose of forcing plaintiff to make wage concessions." That was a lawful objective and created a valid labor dispute, both as defined in Section 2h of Article 5154f and at common law. It was immaterial to the right to picket Wamix that only a minority of its employees engaged in the picketing or that those picketing had been discharged from their employment. International Union v. Cox, 148 Texas 42, 219 S.W. 2d 787. Neither was picketing by Union at and near the project premises of the construction companies a violation of Article 5154f. In so far as that Article seeks to interdict picketing of all employers except those with whom a labor dispute exists on the part of their own employees, it offends against the Fourteenth Amendment and is unconstitutional. Construction and General Labor Union v. Stephenson, 148 Texas 434, 225 S.W. 2d 958; American Federation of Labor

v. Swing, 312 U.S. 321, 61 Sup. Ct. 568, 85 L. Ed. 855. If picketing cannot be limited to an employer who has a labor dispute with his employees it necessarily cannot be limited to the premises of such an employer.

■ The fact that the picketing was not violative of Article 5154f does not mean that the trial court was without power to enjoin it; it may have been the coercive instrument of a secondary boycott which the court could enjoin at common law. Cain, Brogden & Cain, Inc. v. Local Union No. 47, etc., 155 Texas 304, 285 S.W. 2d 942. On this phase of the case the trial court found that the defendants agreed and conspired to "carry on secondary picketing at the job sites of plaintiff's customers in the City of Dallas for the purpose of: * * * "(b) compelling said customers to cease doing business with plaintiff and to breach the written contract of purchase with it." We must decide, then, whether the type of picketing being carried on by Union was an incident of a secondary boycott and whether, as such, it was contrary to the public policy of this state.

It will be noted that the first prong of the injunction actually prohibits two separate kinds of union activity: (a) picketing Wamix hauler and mixer trucks at, on or near the premises of neutral contractors, and (b) maintaining ambulatory and roving pickets to accompany the trucks to job sites where concrete was being delivered.

With reference to the second type of activity we are clear that it does not constitute secondary picketing. We had occasion only recently in Cain, Brogden & Cain v. Local Union No. 47, etc., supra, to consider the nature of a secondary boycott which is contrary to the public policy of this state, and we concluded that it involves the application of coercive pressure on one not a party to a labor dispute to withdraw patronage from an employer with whom a dispute exists. 285 S.W. 2d 947. Judge Learned Hand has defined a secondary boycott in these words: "The gravamen of a secondary boycott is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employee's demands." International Brotherhood, etc. v. N.L.R.B., 181 Fed. 2d 34, 37. There is no such coercive pressure in the restricted activity of pickets accompanying trucks to job sites. The judgment is obviously erroneous in enjoining Union from having its pickets accompany Wamix trucks to job sites.

Whether the first type of activity is contrary to the public policy of this state is a more difficult question. In Cain, Brogden & Cain v. Local Union No. 47, etc., supra, we stated our guiding rule in these words: "Cases involving industrial strife between employer and employee require a careful weighing of the rights of each to the end that the power of the judiciary, when invoked, will be used to prevent an imbalance deleterious to the public welfare." 285 S.W. 2d 948. In fact situations like the present the problem is whether the public welfare is better served by preserving to the employee his right to publicize his differences with his employer at any point where his employer's business is being transacted when the exercise of that right results in economic harm to a neutral customer of the employer, or whether it is better served by protecting the business of the neutral to the extent of restricting the area in which the employee may exercise his constitutional right of free speech.

■ We have long since held that the business of the neutral will not be protected from the harmful effects of picketing in all instances and under all circumstances, Ex Parte Henry, 147 Texas 315, 215 S.W. 2d 588, so that we may not now, without overruling Ex Parte Henry, lay it down as an inexorable rule of decision that all picketing which results in incidental pressure on and harm to a neutral may be enjoined. On the other hand, it is also now well settled that picketing will be enjoined if it is principally directed at and operative on a neutral. Cain, Brogden & Cain v. Local Union No. 47, etc., supra; Carpenters and Joiners Union v. Ritter's Cafe, Texas Civ. App., 138 S.W. 2d 223; on subsequent appeal, 149 S.W. 2d 694; 315 U.S. 722, 62 Sup. Ct. 807, 86 L. Ed. 1143. The question may thus often resolve itself into one of degree or relative harm.

There are no cases decided by this Court involving fact situations like that in the instant case or closely analagous to it. We are free, therefore, to look to like or analagous cases from other jurisdictions. Most such cases have appeared in and been decided by federal rather than state courts, but as we declared in Cain, Brogden & Cain v. Local Union No. 47, etc., supra, "The public interest involved in industrial strife in intrastate business cannot be greatly different from the public interest in industrial strife in interstate business." 285 S.W. 24 949.

The federal cases arise out of construction by the National Labor Relations Board and the federal courts of Section 8 (b) (4) (A) of the Labor Management Relations Act, 29 U.S.C.A., Section 158 (b) (4) (A) which, in some of its aspects, is but a

statutory restatement of the common-law rule against secondary boycotts.[1] These cases recognize an inevitable truth: that when more than one employer is engaged in work on a particular project, an otherwise perfectly legal strike and picketing of one employer may, because of the nature of the situs, result in work stoppages of a neutral employer whose union employees will refuse to cross or work behind a union picket line. They have not condemned all such activity as being proscribed by the Act. On the contrary, the National Labor Relations Board has worked out and in most recent cases has applied a formula, generally recognized by the federal courts, by which it has sought to test the legality of the activity as primary rather than secondary. The formula was first applied in what is known as the Moore Dry Dock case. Sailors' Union of the Pacific, 92 N.L.R.B. 547. It recognizes that an employer's business may have an ambulatory or roving secondary situs away from his principal place of business and upholds picketing at the secondary situs, even though the same be the premises of a neutral employer, if the picketing meets the following conditions: "(a) The picketing is strictly limited to times when the situs of dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at the situs; (c) the picketing is limited to places reasonably close to the location of the situs; and (d) the picketing discloses clearly that the dispute is with the primary employer." For cases applying the formula, see N.L.R.B. v. Service Trade Chauffeurs, etc., 2d Civ. 191 Fed. 2d 65; second appeal, 2d Civ., 199 Fed. 2d 709; N.L.R.B. v. Chauffeurs, Teamsters, etc., 7 Civ. 212 Fed. 2d 216; N.L.R.B. v. Local Union No. 55, 10 Cir., 218 Fed. 2d 226; Piezonki v. N.L.R.B., 4 Civ. 219 Fed. 2d 879. For discussion of these and other cases, see 42 Va. Law Review 363.

If the Moore Dry Dock Co. formula were adopted by this Court as the solution best promoting the public welfare in this state and were applied in the instant case we would hold that the picketing by Union at construction sites where concrete was delivered by Wamix for use was legal and that the trial court erred in enjoining it. But we doubt the wisdom of embracing the formula as a cure for all ills. It seems to us at best a formula by which a fact-finding agency seeks to determine whether the picketing at the secondary situs in a given case represents an honest effort to publish the grievances of em-

---

[1] "(b) It shall be an unfair labor practice for a labor organiation or its agents—— * * * (4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike * * * where an object thereof is: (A) forcing * * * any employer * * * to cease doing business with any other person; * * * "

ployees against their employer to customers and prospective customers and to induce employees to cease work, or whether, on the other hand, the secondary situs is being used as a cloak to mask secondary economic pressure applied to and through neutral employers. The question may thus often turn on intent, and we doubt that our trial courts, which are the fact-finding agencies of our state judicial system, should be strait-jacketed in their effort to arrive at intent by a rigid formula. As a matter of fact, not all of the federal courts considering the matter have recognized the pre-eminence of the formula.

In N.L.R.B. v. General Drivers, etc. C.C.A. 5th Circuit, 225 Fed. 2d 205, the N.L.R.B., using the Moore Dry Docks Co. formula for testing legality of union picketing at a secondary situs ,entered a cease and desist order against the picketing and applied to the Fifth Circuit for an enforcement order. That court rejected the formula as a rigid device for determining legality of the picketing, saying: "Irrespective of the Board formulated 'situs' theory, however, we think such peaceful picketing upon common premises, directed solely against the primary employer with whom a labor dispute exists, is still lawful under the Act, and that any adverse effect upon secondary, neutral employers must necessarily be viewed as incidental to the lawful exercise of that statutory right." 225 Fed. 2d 210. In rejecting the formula we cannot accept the view expressed by the Fifth Circuit, for, as one writer has expressed it, "Thus, a well-disciplined district trades council, by the use of appropriate language on its picket placards and handbills, could bring construction in a given area to a virtual standstill until the demands of a member union, or of a non-member local, were met." 42 Va. Law Review 363, 377. Neither can we accept as a solution of the problem a recent ruling by the N.L.R.B. that all picketing at a secondary situs is illegal if the struck employer has a principal place of business where the picketing can be carried on. The ruling was rejected by the District of Columbia Circuit in Sales Drivers, etc. v. N.L.R.B., 229 Fed. 2d 514. It was rejected also by the above-quoted writer, who said: "On the other hand, to limit strictly the right of the union to picketing the primary employer's principal place of business would, in a number of cases, deprive the union of its only effective collective bargaining weapon, and thus determine the result of any strike before it began." 42 Va. Law Review, 363, 377.

■ From the foregoing discussion we conclude that while secondary picketing as defined in Cain, Brogden & Cain v. Local

Union No. 47, etc., supra, is contrary to the public policy of this state and subject to judicial restraint, not all picketing which has a secondary effect will be regarded as proscribed by the public policy; that two important factors in determining whether picketing in a particular case because of its secondary effect on neutral employers is proscribed by the public policy are: (a) the good faith intent of the union or striking employees in picketing a secondary situs to exert pressure only on the primary employer, to which effort the effect on neutral employers is purely incidental, and (b) the balancing of relative rights of all affected parties against the harm which would result to the other parties and to the public from permitting or restraining the picketing. In a hearing on a temporary injunction these matters will ordinarily address themselves to the sound discretion of the trial judge and only rarely may the issue be decided as a law question. If the Court concludes, upon evidence of probative force, that the real purpose of picketing at a secondary situs is to exert economic pressure on a neutral and it has that effect there will be no need to consider the second factor.

As heretofore pointed out, the trial court made a specific finding in this case that the defendants agreed and conspired "to carry on secondary picketing at the job sites of plaintiff's customers in the City of Dallas for the purpose of: "* * * (b) compelling said customers to cease doing business with plaintiff and to breach the written contract of purchase with it." While Union has a point of error asserting that the trial court's judgment is "contrary to the evidence," it does not attack, specifically, the foregoing finding. And even if it had, evidence that pickets were posted at the construction sites, when Wamix had five manufacturing plants where pickets could be posted, that employees of neutral employers ceased work until the pickets were removed, and that when a Wamix driver was not permitted to make delivery one picket remarked: "We got her tied up, haven't we, you damned scab?" is some evidence to sustain the finding of the trial judge that the purpose of the picketing at construction sites was to induce other employees to cease work and thereby to exert coercive pressure on neutral employers. This being so, there is support in the evidence for th trial court's judgment. To be entitled to a temporary injunction Wamix was required only to plead a cause of action and offer evidence tending to support it; it was not required to establish that it would finally prevail in the litigation. Transport Co. of Texas v. Robertson Transports, 152 Texas 551, 261 S.W. 2d 549.

The judgments of the courts below are reformed and the writ of temporary injunction issued by the trial court modified in keeping with this opinion and, as reformed and modified, are affirmed. Costs are divided equally between the parties.

Opinion delivered October 10, 1956.

MR. JUSTICE SMITH joined by JUSTICE GRIFFIN dissenting.

I respectfully dissent.

This is a suit for damages in the nature of a tort action where the trial court, in the exercise of its discretion, has granted temporary ancillary injunctive relief for the purpose of maintaining the status quo and preventing irreparable injury pending a trial on the merits.

That the action by Wamix is a suit for damages is admitted by petitioners. The Court of Civil Appeals has held, contrary to the contention of petitioners, that the trial court properly retained jurisdiction of this case, in that it had jurisdiction over a suit for damages, and that exclusive jurisdiction had not been vested in the National Labor Relations Board under the terms of the Labor Management Relations Act of 1947. In the trial court and the Court of Civil Appeals, the petitioners urged that a state court had no jurisdiction to grant injunctive relief to prevent acts and conduct within the exclusive jurisdiction of the National Labor Relations Board.

We should approve the action of the trial court and the Court of Civil Appeals both on the question of jurisdiction and the granting of the temporary injunction: (1) because a state court has jurisdiction to hear and determine a common-law tort action for damages even where the conduct complained of constitutes an unfair labor practice under federal law; (2) because the trial court found that the National Labor Relations Board would and did refuse to exercise its powers in regard to the controversy involved; (3) there is no evidence that the jurisdiction of the Board was ever invoked so far as the present controversy is concerned; (4) the trial court correctly found that the suit filed by Wamix was one "primarily for damages" and the injunction was sought as ancillary relief to preserve the status quo until the case could be finally heard and determined on the merits.

The conclusion of the trial court that the Wamix cause of action was a damage suit was predicated upon findings of fact indicating a loss, as of the date of hearing on the temporary

injunction, in excess of $16,000.00 and a probable loss of $100,-000.00 or more if the petitioners' actions were allowed to continue.

It is well settled that the state court may entertain a damage suit predicated on a common-law tort action when the actions of the defendants may also be unfair labor practices under the Labor Management Relations Act. The Supreme Court of the United States in the case of United Construction Workers v. Laburnum Construction Corporation, 347 U.S. 656, 74 Sup. Ct. 833, 834, 98 L. Ed. 1025, very definitely settled this question when it said:

"The question before us is whether the Labor Management Relations Act, 1947, has given the National Labor Relations Board such exclusive jurisdiction over the subject matter of a common-law tort action for damages as to preclude an appropriate state court from hearings and determining its issues *where such conduct constitutes an unfair labor practice under that Act. For the reasons hereafter stated, we hold that it has not.*"

\* \* \*

"We accept the view of the National Labor Relations Board that respondent's activities affect interstate commerce within the meaning of the Labor Management Relations Act."

\* \* \*

"\* \* \* we assume the conduct before us also constituted an unfair labor practice within the following provisions of that Act! \* \* \*"

\* \* \*

"Here Congress has neither provided nor suggested any substitute for the *traditional state court procedure* for collecting damages for injuries caused by tortious conduct."

\* \* \*

"The care we took in the Garner Case to demonstrate the existing conflict between state and federal *administrative remedies* in that case was, itself, a recognition that if no contract had existed, *the state procedure would have survived.* \* \* \*

"The Labor Management Relations Act sets up no general compensatory procedure except in such minor supplementary ways as the reinstatement of wrongfully discharged employees with back pay."

\* \* \*

"The 1947 Act has increased, rather than decreased, the legal responsibilities of labor organizations. Certainly that Act did not expressly relieve labor organizations from liability for

unlawful conduct. It sought primarily to empower a federal regulatory body, through administrative procedure, to forestall unfair labor practices by anyone in circumstances affecting interstate commerce. The fact that it prescribed new preventive procedure against unfair labor practices on the part of labor organizations was an *additional* recognition of congressional disapproval of such practices. *Such an express recognition is consistent with an increased insistence upon the liability of such organizations for tortious conduct and inconsistent with their immunization from liability for damages caused by their tortious practices.*"

\* \* \*

"Section 10 (c) directs the Board to issue a cease-and-desist order after an appropriate finding of fact. *There is no declaration that this procedure is to be exclusive.*" See Garner v. Teamsters' Union, 346 U.S. 485, 74 Sup. Ct. 161, 98 L. Ed. 228, Id. 373 Pa. 19, 94 Atl. 2d 893.

The petitioners do not take the position that this is not a suit for damages. They admit that it is such a suit, but their primary position is that the state court is without jurisdiction to enjoin in a field pre-empted by the federal law. My contention is that exclusive jurisdiction of the labor practices sought to be enjoined in this case was never placed with the National Labor Relations Board under the terms of the Labor-Management Relations Act, 1947. The case of Weber v. Anheuser-Busch, (1955) 348 U.S. 593, 75 Sup. Ct. 480, 99 L. Ed. 546, 35 L.R.R.M. 2638, cited by petitioners has no application here. It was not a suit for damages. In that case, the complaint itself alleged unfair labor practices within the meaning of the Labor Management Relations Act, whereas the petition in the present case does not contain any such allegations. In the instant case there was uncontradicted evidence showing that the Board would decline to exercise its jurisdiction once its jurisdiction was invoked. In that case no such allegations were made. It is settled that in all cases where it has been shown that the Board would decline to exercise its jurisdiction, once its jurisdiction was invoked, the state court has jurisdiction.

In our case the petitioners are maintaining they have the right to a hearing only before an agency, the National Labor Relations Board, which will not act in the matter.

I think the case of Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local No. 941 v. Whitfield Transportation, Inc. 154 Texas 91, 96, 273 S.W. 2d 857, 860, is sufficient authority for the proposition that a situation where it affirma-

tively appears that the National Labor Relations Board would refuse to exercise its powers if its jurisdiction were invoked.

In the Whitfield case, supra, this court said:

"* * * The Garner opinion observes with evidently studied purpose that in that case it did not appear 'that the Federal Board (N.L.R.B.) would decline to exercise its power once its jurisdiction was invoked.' 346 U.S. 485, 74 Sup. Ct. 164. This limitation, repeated in the per curiam opinion in the Kinard Construction Co. case (346 U.S. 933, 74 Sup. Ct. 373), was clearly recognized also in the recent decision of the Supreme Court of New Jersey in Busch & Sons, Inc. v. Retail Union of New Jersey, 15 N.J. 226, 104 Atl. 2d 448 * * * True, the Busch case, supra, speaks in terms of discretionary refusal of the Board to exercise actual ('express') powers (Art. 160 (b) ), *but we perceive no practical difference between such a refusal and one based, as in the Arkansas Express, Inc. case, supra, upon the Board's view that it was not authorized to act. The resultant difficulty for a complainant urgently seeking a remedy is the same in both instances and would seem to make it as 'futile' to apply to the Board in the one case as in the other.* See Kinard Construction Company decision, supra." See Optical Workers' Union, Local 24859 et al v. National Labor Relations Board, No. 15460, 5th Circuit, 227 Fed. 2d 687.

In our case, the trial court found that the N.L.R.B. would decline to exercise its jurisdiction once its jurisdiction was invoked. There was no evidence introduced by petitioners showing or tending to show that the operations of Wamix, Inc. met the new jurisdictional criteria established by the National Labor Relations Board. In the Optical Workers' Union case, supra, the Union sought a review of a National Labor Relations Board order dismissing the Union's petition for certification as bargaining agent for the employers of Rogers Brothers wholesalers, a Texas partnership, and a complaint issued against the partnership for unfair labor practices. The dismissal was pursuant to the Board's policy announced June 30, 1954, whereby it will not hear cases falling within its statutory jurisdiction over labor disputes "affecting commerce," if the nature or volume of the business of the employer involved do not meet certain admittedly more stringent requirements.

The court in the Optical Workers' Union case, supra, points out that —

"* * * the volume of the employer's business satisfied the

Board's prior jurisdictional limitations, laid down in October, 1950, [62 Yale L. J. 116], and the proceedings under these criteria had gone forward to the point where the certification petition and the unfair labor practice complaint had been consolidated for a single hearing, which had been held before a Trial Examiner. From the evidence there adduced, the Trial Examiner had made findings of fact concerning the employer's volume of business and the unfair labor practices for which the union seeks relief, and had recommended that the employer be ordered to cease and desist from these unfair labor practices and that it also be ordered to recognize and bargain with the union as the exclusive representative of its employees.

"While the Trial Examiner's report was awaiting action by the Board, the Board promulgated its present jurisdictional limitations. Accordingly, when the case came before it, it adopted the Trial Examiner's findings and conclusions—'to the limited extent that they are consistent with this Decision and Order' — but dismissed the complaint and the representation petition because the employer's volume of business did not satisfy the new standards. 110 N.L.R.B. 604, 35 L.R.R.M. 1081."

The Union Urged that the Board, while having authority to decline jurisdiction over particular labor disputes on a case-by-case basis, "cannot adopt a rule 'legislating' a substantial number of employees and employers out of the administration of the Act. In the alternative, they contend that the rule adopted is an arbitrary one. Finally, they argue that it cannot be applied retroactively, because, they say, the Trial Examiner's finding that the employer was engaged in commerce within the meaning of the Act established N.L.R.B. jurisdiction as the law of the case." The court, in declining to uphold the contention of the Union, said:

"What the petitioners here complain of, therefore, is that the Board now acts under an announced policy, rather than a presumed policy, and that it has applied this policy retroactively to them, overturning 'the law of the case.' We hold in accordance with the Chenery case, supra, that the Board has authority to adopt and reverse policy, either in the form of an individual decision or as rule-making for the future, in any manner reasonably calculated to carry out his statutory duties, without regard to whether such action strictly conforms to the rules applicable to courts or legislative bodies. Therefore, finding, as we do, that the standards adopted by the Board are reasonable, we can discern no valid distinction between a decision made under these criteria and one made under the

former unannounced policy. Furthermore, there is no sound reason why standards cannot be applied retroactively, as here, or prospectively, as in N.L.R.B. v. Red Rock Co. (5 Cir.), 187 Fed. 2d 76, 27 L.R.R.M. 2355.

"We thus hold that the Trial Examiner's finding that the employer was engaged in commerce within the meaning of the Act did not bind the Board as the law of the case, for that concept, also, has no place in circumscribing the Board's action. Finally, we see no merit in the petitioners' contention that the Board erred in not remanding the case for new findings regarding coverage under the current standards, when the petitioners did not set forth in their letter to the Board what new facts they expected would be shown in another hearing."

Petitioners in the present case rely on the case of Dyer v. International Brotherhood of Teamsters (1941), 124 Calif. App. 2d 788, 269 Pac. 2d 199, 205, to support their contention that this court should hold that a state court is without jurisdiction to grant ancillary injunctive relief to preserve the status quo in a damage suit. I agree with the respondent in its contention that this case is not in point. In the Dyer case the court was asked to issue a temporary writ to maintain the status quo "until the National Labor Relations Board has had time to act." The court commented "No California statute affording temporary state injunctive relief under the circumstances here presented has been called to our attention, * * *" Some of the questions involved in the present case were also present in the case of Dallas General Drivers, Warehousemen and Helpers, et al. v. Jax Beer Co. of Waco, Texas, Texas Civ. App., 276 S.W. 2d 384 (no writ history). These questions were decided adversely to the contention of petitioners here, and I think properly so.

It is true the majority opinion by this court holds that the trial court did not err in taking jurisdiction of this suit, but it seems to me that the conclusion has been reached on an erroneous interpretation of the points attacking jurisdiction presented by petitioners in their petition for writ of error. Petitioners' points 1 and 2 present the questions (1) The state deos not have jurisdiction to enjoin in a field pre-empted by the federal law, (2) "The Court of Civil Appeals erred in overruling appellants' first point and holding, in effect, that a state court may grant injunctive relief to prevent acts and conduct within the exclusive jurisdiction of the Labor Management Relations Act of 1947 where the application therefor is ancillary to a suit for damages."

Turning now to the question of whether or not the temporary injunction should be dissolved. Once it is determined, as it has been in this case, both by the majority and the minority, that the state court has jurisdiction of the subject matter of this suit, it naturally follows that we are concerned with a temporary injunction and not a permanent injunction. In determining whether or not a temporary injunction should be granted or refused by the trial court, this Court laid down the true test in the case of Texas Foundries, Inc. v. International Moulders and Foundry Workers' Union et al., 151 Texas 239, 248 S.W. 2d 460, 462. The Court said:

"The granting or refusing of a temporary injunction is subject to a very different character of appellate review from the granting or refusing of a permanent injunction. The trial court is clothed with broad discretion in determining whether or not to issue a temporary injunction to preserve the rights of the parties pending a final trial of the case, and when that discretion is exercised its order should not be overturned unless the record discloses a clear abuse of discretion * * *

"The test announced by this court is: 'If the petition does allege a cause of action and evidence tending to sustain such cause of action is introduced, then there is no abuse of discretion by the trial court in issuing the temporary injunction.' "

The case of Transport Co. of Texas v. Robertson Transports, 152 Texas 551, 261 S.W. 2d 549, 552, the test in determining whether or not a temporary injunction should be sustained was so adequately stated by Mr. Justice Calvert speaking for this Court when he said:

"In a hearing of an application for a temporary injunction the only question before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. James v. Weinstein & Sons, Texas Com. App., 12 S.W. 2d 959, 960. To warrant the issuance of the writ, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. Rosenfield v. Seifert, Texas Civ. App., 270 S.W. 220, 223; Nagy v. Bennett, Texas Civ. App., 24 S.W. 2d 778, 781; High on Injunctions, 4th Edition, Vol. 1, Sec. 5, p. 8. If the party enjoined prevails on a final trial of the case he finds protection against the improvident granting of the writ and consequent loss in the interim in the applicant's bond. Where the pleadings and the evidence present a case of probable right and probable in-

jury, the trial court is clothed with broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of a clear abuse of discretion. Texas Foundries v. International Moulders & Foundry Workers' Union, 151 Texas 239, 248 S.W. 2d 460, 462. There is no abuse of discretion in the issuance of a writ if the petition alleges a cause of action and the evidence adduced tends to sustain it. Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Texas 560, 99 S.W. 2d 263, 109 A.L.R. 1235."

The majority opinion in the present case written by the same eminent jurist, and my esteemed associate, recognizes and applies, in part, the rules announced in the Robertson Transport case, supra, and the Texas Foundries case, supra, but dissolves the injunction, in part, on the theory that the trial court erroneously applied the law to the facts in so far as the temporary injunction restrained the petitioners "from using insulting, threatening and indecent language toward any Wamix employees, who desire to work, for the purpose of interfering with, hindering and intimidating such employees," and "From publishing orally or in writing any statement to the effect or implying that Wamix trucks were being driven by strike breakers or that all regular Wamix drivers were on strike."

As authority for the holding that the granting of the temporary injunction in the particulars just above mentioned was based upon an erroneous application of the law to the facts, the majority cites the case of Southland Life Ins. Co. v. Egan, 126 Texas 160, 86 S.W. 2d 722, 723.

I respectfully submit that the Egan case is no authority for dissolving the injunction in this case and holding, in effect, that the trial court abused its discretion in the respects above stated. This Court in the Egan case, supra, was concerned with a situation where it was successfully claimed that the trial court failed and refused to apply the law to conceded or disputed facts. It was not for that court nor is it the province of this Court to determine the facts. In the Egan case, the Court said:

"If the facts are such that solely questions of law are presented, the trial court's action is reviewable, and should be reviewed on appeal. Differently stated, the trial court abuses its discretion when it fails or refuses to apply the law to conceded or undisputed facts."

The trial court after hearing the evidence concluded that, (1) respondents had plead a cause of action and that it had

jurisdiction of the subject matter; (2) that probable injury had been shown; (3) that it was necessary to preserve the status quo of the litigants pending a trial on the merits.

The abusive language used — "We got her tied up, haven't we, you damned scab," and the use of banners reading: "These Wamix trucks are being driven by strike breakers" were words and acts spoken and committed as an integral part of a course of activities employed by the Union. The trial court has made a specific finding in this case that these matters occurred and that such acts warranted the issuance of a temporary injunction. I contend that the acts were unlawful, but, if you admit for the sake of argument that Items 2 and 3 were not unlawful, still it must be held that such words and acts were and are an integral part of an act which the majority admits warranted the granting of the injunction.

I would affirm the judgment of the trial court and the Court of Civil Appeals.

Opinion delivered October 10, 1956.

Rehearing overruled December 19, 1956.