S. S. S. WATER SYSTEMS, INC., Appellant,

v.

The CITY OF GRANITE SHOALS, Texas, Appellee.

No. 13192.

Court of Civil Appeals of Texas, Austin.

June 4, 1980.

Campbell McGinnis, Austin, for appellant.

Ronald F. Yates, Kingsland, for appellee.

SMITH, Justice.

Appellee, the City of Granite Shoals, Texas, brought suit against appellant, S.S.S. Water Systems, Inc., seeking a declaration that the water rate established by appellee's Board of Commissioners on June 25, 1979, was the proper rate for water furnished by appellant within appellee's corporate limits and for a temporary injunction maintaining the *status quo* until such declaratory judgment was entered. The district court, after hearing, temporarily enjoined appellant from charging any other rates other than those set by the Board of Commissioners on June 25, 1979. It is from this injunction that appellant has perfected this appeal.

The sole question presented by this appeal is whether the trial court abused its discretion in granting the temporary injunction. To make this determination, we must discuss in some detail the chronology of events developed in the record.

Appellee, City of Granite Shoals, is an incorporated city having the function of a regulatory authority with original jurisdiction over utility rates within its corporate boundaries. This jurisdiction has not been ceded or surrendered to the Public Utilities Commission of Texas, under the provision of Tex.Rev.Civ.Stat.Ann. art. 1446c, Section 22 (1980), the Public Utilities Regulatory Act or "PURA."

Appellant, S.S.S. Water Systems, Inc., is a utility company which furnishes water to customers within appellee's corporate boundaries and to other customers living in non-exempt areas within Burnet County. These rates in the non-exempt areas, outside the corporate boundaries of appellee, are within the original jurisdiction of the PUC, as authorized by PURA.

On or about May 24, 1979, appellant commenced proceedings to change the rate charged for water in the non-exempt areas by addressing a statement of intent to the PUC to raise the minimum rate from $7.20 to $14.00 with other increases for additional consumption. We assume, without ruling

on the matter, that the requested rate change and the notices given by appellant were proper and sufficient to invoke the jurisdiction of the PUC. A copy of the application filed with the PUC was delivered to appellee.

Appellant did not appear to have been represented by an attorney at this time, and the engineer handling its application apparently did not appreciate the status of appellee as a regulatory authority with original jurisdiction under PURA. The record shows that, instead of proceeding with two separate applications and two separate notices, appellant proceeded as if the PUC had original jurisdiction over the rates of all appellant's customers. In any event, a copy of the application filed with the PUC and a copy of the notice was delivered to appellee. Appellant did not file with appellee any application or statement of intent to raise the rates within appellee's corporate limits nor did it issue any statutory notice specifically directed to such an increase.

■ We are not unaware of PURA § 43(a), which states, "A copy of the statement of intent shall be mailed or delivered to the appropriate officer of each affected municipality, and notice shall be given . . ." However, this provision is not applicable where the municipality has exclusive original jurisdiction as defined by PURA § 17(a). In such situations, the municipality is entitled to the same original procedures as are provided by PURA for rate increases over which the PUC would have exclusive original jurisdiction.

After receiving the copies filed with the PUC, the City placed the matter of a rate increase on its meeting agenda for June 25, 1979. Some three days prior to the day of hearing, appellant delivered to appellee a copy of a second notice of rate change, which stated that it superseded the prior notice. The original of the second notice, like the first, was filed with the PUC and had reduced the minimum rate requested from $14.00 to $12.50.

Both the first and second notice stated, "*Anyone opposing the rate change may file*

*a written statement with the Public Utility Commission of Texas*, 7800 Shoal Creek Blvd., Suite 450N, Austin, Texas, stating the reasons for opposing or may file with the Commission and with applicant utility a Notice of Intent to participate in a public hearing." Nowhere in either notice was the Board of Commissioners recognized as a regulatory authority with original jurisdiction.

The following action is reflected in the minutes of the Board of Commissioners' meeting of June 25, 1979:

"Mayor Hobbs made a motion to propose to the S.S.S. Water Systems, Inc., a raise of $9.00 for 3,000 gallons and the same rate as in the past for the average of 3,000 gallons. Commissioner Hamill seconded. Vote passed."

No order was issued by the City, as required by Section 43(f) of PURA, and no ordinance raising rates was adopted. There was no representative from appellant at this meeting. However, on July 9, 1979, a letter was sent to appellant by Mayor Hobbs which set out the above proposal.

No further action was taken until appellant billed its customers within the city for their November, 1979, water at the $12.50 minimum rate. Appellee then filed this suit.

The record does not indicate that appellant filed a bond with appellee, as required by PURA § 43(e), before it attempted to put the changed rate into effect.

■ In suits for temporary injunctions, the trial judge is endowed with broad discretion to grant or deny the injunction. The scope of appellate review in such cases is limited to the narrow question of whether the action of the trial judge in granting or denying the temporary injunction constitutes a clear abuse of discretion. *Janus Films, Inc. v. City of Fort Worth*, 153 Tex. 616, 358 S.W.2d 589 (1962); *State v. Southwestern Bell Telephone Co.*, 526 S.W.2d 526 (Tex.1975).

The record in the case at bar presents serious legal questions as to whether appellant's actions ever invoked the original jurisdiction of appellee's regulatory authority. Certainly the district court could have reasonably concluded that, under the evidence introduced at the hearing on temporary injunction, no valid rate change request by appellant was ever before the Board of Commissioners. As we cannot determine question of law in advance of a trial on the merits, we do not decide that question. *Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union*, 151 Tex. 239, 248 S.W.2d 460 (1952).

■ The only valid purpose of a temporary injunction is to maintain the *status quo* pending a final trial of the case on the merits. The *"status quo"* to be preserved by temporary injunction is the last, actual, peaceable, non-contested status which preceded the pending controversy. *Transport Company of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549 (1953).

After careful review of the record, we do not arrive at the same *"status quo"* reflected in the order of the district court. The last non-contested rate was the $7.20 minimum which was charged through October, 1979. The $9.00 minimum proposed by the Board of Commissioners at its June 25, 1979, meeting was never formally acted upon by the City, nor accepted by appellant. This $9.00 minimum rate was the amount requested by appellee in its petition for a temporary injunction, and was the only rate which the pleading suggested to the district court.

The district court's order granting the temporary injunction recites:

"On considering the evidence received and the argument of counsel, the Court finds and concludes that the Plaintiff has clearly shown that it will probably prevail on the trial of this cause; that S.S.S. Water Systems, Inc., Defendant herein, has engaged in conduct and will continue to engage in conduct unless restrained, consisting of the charging and attempting to charge its customers in the City of Granite Shoals, Texas, rates for water usage which utilize a rate of $12.50 per two thousand gallons of water and $1.50 for one thousand gallons of water used

over the two thousand gallon charge on a monthly basis and that, *that rate is in variance with the proper rate established by the Board of Commissioners of the City of Granite Shoals, Texas, on June 25, 1979, which is $9.00* for the first three thousand gallons of water used by a customer each month, $1.20 per thousand gallons for the next 3,000 gallons each month; $.90 per thousand gallons for the next 4,000 gallons each month; and $0.60 per 1,000 gallons for all over 10,000 gallons each month; and that unless said Defendant is deterred from engaging in the aforementioned conduct, Plaintiff will be without any adequate remedy at law and will suffer immediate and irreparable injury, loss or damage."

It is obvious from the record that the last peaceable non-contested status of the parties was that time prior to the June 25, 1979, meeting of the Board of Commissioners when the rate was a $7.20 minimum. The temporary injunction ordered by the district court did not in any way purport to preserve the *"status quo"* between the parties. Its plain import was to ultimately decide the issue of the *proper rate.* This was error for two reasons.

■ First, the court's order in the case at bar attempted to answer all of the ultimate issues as to the parties' rights without compliance with the law for such cases. *McCan v. Missouri Pacific Railroad Company,* 526 S.W.2d 754 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Perry v. Stringfellow,* 134 Tex. 328, 134 S.W.2d 1031 (1940); *James v. E. Weinstein & Sons,* 12 S.W.2d 959 (Tex. Com.App.1929, holding approved).

■ Second, it is well settled that a temporary injunction will be dissolved if it is based upon an erroneous application of the law to the facts. *Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc. of Dallas,* 156 Tex. 408, 295 S.W.2d 873 (1956). Under all of the facts developed at the hearing in the present case, the City of Granite Shoals in the meeting of the Board of Commissioners on June 25, 1979, did not, as a matter of law, set any legal water rate. The record is clear that there was no rate adopted by the Board of Commissioners and no order issued regarding a rate. Thus, the district court was in error in finding that $9.00 was a proper rate.

Since the district court clearly abused its discretion in deciding the ultimate issue on the hearing for temporary injunction and exceeded its authority in stabilizing the position of the parties at a level which did not maintain the *"status quo,"* the judgment of the district court is reversed, and the order granting the temporary injunction is dissolved.

PHILLIPS, C. J., not sitting.