SOUTHERN UNION GAS CO.,
Appellant,

v.

The CITY OF PORT NECHES, Texas
et al., Appellees.

No. 09–82–004–CV.

Court of Appeals of Texas,
Beaumont.

Jan. 6, 1983.

Rehearing Denied Feb. 2, 1983.

---

Robert Q. Keith, Thomas H. Walston, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, for appellant.

Harry P. Wright, Port Neches, George Wikoff, City Atty., Earl Black, Port Arthur, W.E. Sanderson, Jon Burmeister, Nederland, for appellees.

DIES, Chief Justice.

Appellees herein are the cities of Port Neches, Port Arthur, Nederland, Groves, Griffin Park, and Lakeview. In December 1971, Pennzoil Pipeline Company (now United Texas Transmission Company—UTTCO), entered into a gas supply agreement with Southern Union Gas Company; with the latter selling the gas to the cities. The contract provided for an annual price adjustment. In 1974, the cities enacted rate ordinances which adopt by reference the 1971 contract. The 1971 contract had this provision: "For each Rate Year, which shall be a twelve (12) month period of Oct. 1 through September 30 . . . ." In 1975 UTTCO and Southern Union sought the Railroad Commission's approval of semi-annual rate increases between UTTCO and Southern Union, which by interim order (GUD 629) were approved on January 26, 1976. On March 2, 1976, thirty days after the interim order was entered, the new rates were put into effect.

Then on August 31, 1976, Southern Union's costs were increased again by the Railroad Commission, to be effective September 16, 1976. Southern Union notified appellee cities of the cost adjustments by letters dated February 6, 1976, and August 17, 1976. In 1977, the Railroad Commission proceeding was settled by all of the parties, including appellee cities. The cities' position is simply that Southern Union had no authority to "flow through" the gas increases made by UTTCO, except annually under the 1971 contract. This cause has been before us previously on appeal from an injunction. *Southern Union Gas Co. v. City of Port Neches,* 544 S.W.2d 176 (Tex.Civ. App.—Beaumont 1976). The trial court named the cities as trustees for the customers, and ordered Southern Union to refund approximately $425,000 to the cities. From this judgment, Southern Union perfects this appeal.

Appellant's first point follows:

"The trial court erred in rendering judgment for the cities because the prosecution of this lawsuit is barred by the final order issued by the Railroad Commission of Texas and the Gas Utilities Docket (G.U.D.) No. 629, and the settlement agreement executed by the cities in that docket and the cities are estopped from asserting a claim for refund."

In Texas, municipal authorities have original jurisdiction to set gas rates in the area covered by the municipality, with appeal to the Railroad Commission. The latter has original jurisdiction to set the rate between the supplier and the distributor—here UTTCO and Southern Union. See *Tex.Rev.Civ.Stat.Ann. Art. 1446c, § 19(a) and (b)*. At the time appellant increased the rates involved, it had authority from appellee cities to do so only annually. The Railroad Commission's order GUD 629 could not change this. This order involved appellant and UTTCO. So, clearly this semi-annual flow through was unauthorized.

But, appellant argues that the cities by their subsequent conduct are estopped from making this contention. And, appellant has a strong argument.

On September 12, 1977, Southern Union, the cities, and UTTCO entered into a settlement agreement, in part providing:

"In this connection the cities agree to withdraw their objections and urge approval by the Railroad Commission of the Amendatory Agreement and this settlement.... In this connection the amounts collected by United Texas pursuant to said interim order shall no longer be subject to refund and the Commission's order approving this settlement shall so provide."

Furthermore, later the cities agreed with appellant to a quarterly adjustment. The real motive for this lawsuit—which we certainly do not criticize—was stated by appellees' attorney:

[A]nd we're just trying to protect our jurisdiction if you will, much like somebody might start around your Court and try to start a case in which you have exclusive, original jurisdiction and all of us are jealous of our exclusive, original jurisdiction and we don't want [anybody] else messing with it."

We reaffirm here that appellees did have original jurisdiction, and this could not be changed by appellant's request to the Railroad Commission. See also, *S.S.S. Water Systems, Inc. v. The City of Granite Shoals,* 601 S.W.2d 191, 192 (Tex.Civ.App.—Austin 1980). The cities point out that the settlement agreement also provides:

"The Settlement provisions are intended to relate only to United Texas' application in this proceeding and shall not constitute a waiver, consent or admission of any principal [sic] of law either expressed or implied herein. This Settlement will not affect any claim or right which any party may have with respect to any other matters. Said Settlement shall in no way prejudice the rights of the parties with respect to *any pending* or future *proceedings before* this Commission or any other regulatory agency *or court having jurisdiction....*" (Emphasis supplied.)

This lawsuit was pending at the time of the settlement agreement. This point of error is overruled.

Appellant's second point is as follows:

"The trial court erred in apparently determining that Southern Union in bad faith breached the terms of the rate ordinances granted by the cities."

Then appellant makes a good and convincing argument that their agreements with the cities, and their letters previously noted in this opinion demonstrate appellant did *not* act in bad faith. We accept the explanation, but, as we said in the earlier appeal, the issue raised is one in contract. "Could defendant change the rate adjustment from annually to twice annually without violating the terms of the franchise ordinances adopted by the cities?" *Southern Union Gas Co. v. City of Port Neches,* supra at 178. We hold they could not and overrule this point of error.

Appellant's third point urges that "[t]he trial court erred in ordering Southern Union to refund $424,415.47 because Southern Union is entitled to recover such increased costs from its customers and because if there were damages, then the refund of such costs is not the proper measure of such damages." The argument is made that in the absence of a showing of inefficiency, improvidence, waste or bad faith, a public utility is allowed to recover from its

customers the necessary fair and reasonable expenses of operation. Appellant cites many authorities to support this argument including *Tex.Rev.Civ.Stat.Ann. art. 1446c, § 39* (the Public Utility Regulatory Act) and the recent case of *Railroad Commission of Texas v. High Plains Natural Gas Company,* 628 S.W.2d 753 (Tex.1981). This is, of course, the law in Texas, and elsewhere; otherwise no utility could stay in business. But, the fact remains, appellant under the statute we cite herein had the burden of taking its problem first to the cities. This point of error is overruled.

Appellant has points urging the impossibility of complying with the court's order, and that there is no authority for the cities to be made trustees for the customers.

We will discuss the trustee provision of the judgment first. We have found no authority that would make these cities trustees for appellant's customers, and appellant cites one authority which indicates they are not. In *City of El Paso v. El Paso City Lines,* 227 S.W.2d 278 (Tex.Civ.App.— El Paso 1949, writ ref'd n.r.e.), the City of El Paso brought suit claiming that the city bus line charged rates in excess of those fixed by city ordinance. The city contended that it was entitled to recover the excess fares charged. The court (at 285) said: "[I]f anyone is entitled to collect that excess ... it should be the patrons...." The same logic holds true in the case at bar. The cities are not entitled to these funds. Nor are they in any better position to find these customers than appellant, which brings us to appellant's contention that it is impossible to comply with the judgment because of such factors as a high yearly turnover of customers. Of course, a court cannot produce the impossible. However, for those customers still on the line, the refund can be made against future bills as provided by *Tex.Rev.Civ.Stat.Ann. art. 1446c, § 43(e).* For those former customers whose whereabouts are known the rebate can be effected by mail. For the others, all we can do is declare their rights and leave the actions taken up to them. The total rebate to each customer shall include legal interests from the date collected until paid.

The judgment of the trial court is in all things affirmed except that appellee cities are declared not to be trustees for appellant's customers.

REFORMED, and as reformed, AFFIRMED.

BROOKSHIRE, J., not participating.